COMMONWEALTH of Pennsylvania,
Appellee

v.

Chamroeun BY, Appellant.

Superior Court of Pennsylvania.

Argued April 16, 2002.
Filed Dec. 2, 2002.

MaryJean Glick, Public Defender, Lancaster, for appellant.

Vincent Mazeski, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before: JOYCE, BECK and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Appellant Chamroeun By appeals from the judgment of sentence entered on February 6, 2001, in the Court of Common Pleas, Lancaster County. Following a non-jury trial, Appellant was convicted of possession with intent to deliver cocaine and firearms not to be carried without a license. He was sentenced to time served to 23 months, plus five years of probation. Appellant filed the present appeal challenging the suppression court's denial of his motion to suppress the evidence. Upon review, we affirm.

¶ 2 The relevant facts are as follows. On the evening of January 9, 2000, Officer Charles Wildt, III, of the East Lampeter Township Police Department was on patrol on Lincoln Highway East when he observed a dark gray Mazda RX–7, with darkly tinted windows, in a Super 8 Motel parking lot. The vehicle was parked alongside vehicles known to the police as belonging to persons who dealt narcotics.

Officer Wildt observed four individuals enter the Mazda and drive out of the parking lot. He followed the vehicle and initiated a traffic stop based upon the tinted windows violation. Due to the number of persons in the vehicle coupled with the fact that it was beginning to get dark, Officer Wildt radioed for backup. Officers George Quickel of the Lancaster City Police Department and Michael Neff of the East Lampeter Township Police Department arrived on the scene as a safety precaution.

¶ 3 Appellant, the driver of the vehicle, identified himself as Chamroeun By and provided his driver's license and vehicle documents to Officer Wildt. Officer Wildt also obtained the identity and birth dates of the remaining persons in the Mazda. He then returned to his police cruiser to conduct a check on the persons in the vehicle. As a result of the check, Officer Wildt learned that one of the passengers gave false information, *i.e.*, he gave an incorrect name and birth date. Officer Wildt returned to the Mazda and asked Appellant to exit the vehicle. Appellant did so. Officer Wildt issued Appellant a warning for the tinted windows violation and returned the driver's license and vehicle documents to Appellant. He then advised Appellant that he was free to leave. At this point in time, Officer Wildt asked Appellant if he could ask a couple of questions. Officer Wildt asked him if he had any weapons or drugs. He observed Appellant hesitate, become noticeably nervous and begin to perspire. Officer Wildt then asked Appellant if he could search the vehicle. Appellant hesitated. Again, Officer Wildt reminded Appellant that he was free to leave. Officer Wildt asked again if he could search the vehicle. Appellant consented to a search.

¶ 4 The passengers exited the vehicle. Officer Wildt conducted a search. In the center console, a clear plastic bag contain-

ing ten smaller bags, which contained a substance later positively identified as crack cocaine, was found. During the search, a female passenger asked to retrieve her coat from the vehicle because she was cold. Before the officers would give her the coat, they patted the coat down to make sure there were no weapons. In doing so, a .25 caliber magazine was found in one of the pockets. The female passenger was asked if there was a handgun in the vehicle. She responded in the affirmative and that it was located behind the driver's seat. A loaded Beretta .25 caliber semi-automatic handgun was recovered. Subsequently, all of the passengers were taken into custody and were transported back to the police station.

¶ 5 At the police station, Appellant received his *Miranda* warnings. He then provided a handwritten, signed confession in which he admitted that the crack cocaine and the handgun were his, that a room at the Super 8 Motel was rented in his name and that he consented to a search of that room.

¶ 6 Appellant was charged with possession with intent to deliver cocaine and firearms not to be carried without a license. He filed a motion to suppress the physical evidence and the statement taken at the police station on the basis that each was the product of an illegal detention. The suppression court denied the motion. Appellant waived his right to a jury trial, and he was found guilty on both charges. That same day, Appellant was sentenced. This timely appeal followed.

¶ 7 On appeal, Appellant alleges the suppression court improperly denied his motion to suppress evidence where his consent to search the vehicle was the product of an unlawful investigative detention in the absence of reasonable suspicion.

¶ 8 In considering the denial of a suppression motion, our standard of review is well-settled. We must "determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." *Commonwealth v. Ayala,* 791 A.2d 1202, 1207 (Pa.Super.2002). In doing so, we "may consider only the prosecution's [evidence]" and the defendant's evidence to the extent it is not contradictory. *Id.,* 791 A.2d at 1207. If the evidence presented at the suppression hearing supports these findings of fact, we may not reverse the lower court unless its accompanying legal conclusions are in error. *See Commonwealth v. Lohr,* 715 A.2d 459, 461 (Pa.Super.1998).

¶ 9 The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Schneckloth v. Bustamonte,* 412 U.S. 218, 236, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Blair,* 394 Pa.Super. 207, 575 A.2d 593, 596 (1990). Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. *See Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041; *Blair,* 575 A.2d at 596–97. One such exception is a search conducted pursuant to consent voluntarily given. *See Blair,* 575 A.2d at 597 (citation omitted). The Fourth Amendment inquiries in consent cases entail a two-prong assessment: first, the constitutional validity of the citizen/police encounter giving rise to the consent and, second, the voluntariness of said consent. *See Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884, 888 (2000) (citation omitted). Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus. *See id.,* 757 A.2d at 889 (citation omitted). If a defen-

dant's initial detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention absent a demonstration by the government both of a sufficient break in the causal chain between the illegal detention and the seizure of evidence, thus assuring that the search is not an exploitation of the prior illegality, and of voluntariness. *See id.,* 757 A.2d at 889 (citation omitted).

¶ 10 To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *See Commonwealth v. Key,* 789 A.2d 282, 288 (Pa.Super.2001) (citation omitted).

¶ 11 The first of these interactions is a "mere encounter," or request for information, which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. *See Strickler,* 757 A.2d at 889. The second level is an "investigative detention," or *Terry* stop, which must be supported by reasonable and articulated suspicion that the person seized is engaged in criminal activity, and the detention may continue only so long as is necessary to confirm or dispel such suspicion. *See id.,* 757 A.2d at 889. It subjects a suspect to a stop and period of detention but does not involve such coercive conditions as to constitute the functional equivalent of arrest. *See id.,* 757 A.2d at 889. Finally, an arrest or "custodial detention" must be supported by probable cause. *See id.,* 757 A.2d at 889. To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in viewing the totality of the circumstances, a reasonable person would have believed that he was free to leave. *See id.,* 757 A.2d at 889 (citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen's movement has in some way been restrained.[1] *See id.,* 757 A.2d at 889 (citing *Mendenhall,* 446 U.S. at 553, 100 S.Ct. 1870).

¶ 12 In *Strickler* and its companion case, *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903 (2000), our Supreme Court has used these principles regarding seizure to examine a subsequent citizen/police interaction following a valid traffic stop. In these cases, the Court recognized that "the transition between detention and a consensual exchange can be so seamless that the untrained eye may not notice that it has occurred." *Strickler,* 757 A.2d at 892 (citation omitted). Although there may be no question regarding the validity of the initial traffic stop, the crucial question is when the validity of that stop ceased. *See id.,* 757 A.2d at 891.

¶ 13 Where the purpose of an initial, valid traffic stop has ended and a reasonable person would have believed

---

1. In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the United States Supreme Court explained that there is no "litmus-paper" test for distinguishing a mere encounter from a seizure as follows:

   The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

   *Royer,* 460 U.S. at 506, 103 S.Ct. at 1329.

that he was free to leave, the law characterizes a subsequent round of questioning by the officer as a mere encounter. *See Strickler*, 757 A.2d at 898. Since the citizen is free to leave, he is not detained, and the police are free to ask questions appropriate to a mere encounter, including a request for permission to search the vehicle. However, where the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest. *See Freeman*, 757 A.2d at 907. In the absence of either reasonable suspicion to support the investigative detention or probable cause to support the arrest, the citizen is considered unlawfully detained. Where a consensual search has been preceded by an unlawful detention, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the commonwealth both of a sufficient break in the causal chain between the illegality and the seizure of evidence. This assures of the search's voluntariness and that the search is not an exploitation of the prior unlawful detention. *See Strickler*, 757 A.2d at 889 (citation omitted).

¶ 14 In this case, Appellant does not challenge the constitutionality of Officer Wildt's decision to stop his vehicle, the first stop.[2] He challenges the subsequent detention after the valid traffic stop. Appellant contends that Officer Wildt's interrogation of Appellant after he had returned the driver's license and vehicle documents constituted an investigative detention and not a mere encounter. Since Officer Wildt did not have reasonable suspicion to detain Appellant, he argues that the evidence obtained from the unlawful

detention and search should be suppressed. Therefore, we focus solely on the constitutionality of the officer's conduct in obtaining consent to search Appellant's vehicle.

¶ 15 The first citizen/police interaction between Appellant and Officer Wildt ended when Officer Wildt advised Appellant that he was free to leave. The subsequent citizen/police interaction, which is the one we are analyzing, began when Officer Wildt questioned Appellant after the officer had informed Appellant that he was free to leave.

¶ 16 The factors militating against finding an unlawful detention are the following. Officer Wildt's conduct was restrained and non-confrontational. Officer Wildt did not restrain Appellant's freedom of movement by use of or threatened use of force. He spoke in a casual and non-threatening tone of voice. *See* N.T., 2/6/2001, at 14. He did not issue any orders to Appellant, such as instructing Appellant to stand at a particular location. *See id.*, at 14. He did not remove his weapon from his holster. *See id.*, at 14. Most importantly, Officer Wildt did not block Appellant's path of exit. *See id.*, at 14. Appellant was free to leave. After Officer Wildt had asked Appellant's permission to search the vehicle but prior to Appellant consenting to the search, he again informed Appellant that he was free to leave. *See id.*, at 16. Officer Wildt asked again if he could search the vehicle. *See id.*, at 16. Appellant hesitated again and then consented to the vehicle search. *See id.*, at 16.

¶ 17 The following factors support a finding of an unlawful detention. The subsequent interaction stemmed from a valid

---

**2.** Nor would it appear that such an argument could be sustained. Officer Wildt testified that he observed that tinted windows on Appellant's vehicle were in violation of the Vehicle Code. *See* 75 Pa.C.S. § 4524(e).

traffic stop, the encounter took place at night and three police officers were present during the interaction. However, the effects of these factors on a reasonable person's belief that he was free to leave were minimal. The valid traffic stop ended when Officer Wildt returned to Appellant the documents and informed him that he was free to leave. Additionally, the three police officers were present during the subsequent interaction but their presence was not of a nature that would make a reasonable person believe that he was not free to leave. We previously addressed Officer Wildt's conduct and found it to be non-coercive. Officer George Quickel stood behind Officer Wildt during the second interaction. He did not prevent Appellant from leaving the scene. He did not speak to Appellant nor did he remove his weapon. We find that there is no evidence in the record that Officer Quickel's conduct was coercive. That leaves Officer Michael Neff. Officer Neff was standing next to the passenger's side of Appellant's vehicle and was speaking with the passengers in the vehicle when the second interaction occurred.[3] *See* N.T., 2/6/2001, at 12. Appellant argues that Officer Neff's location and conduct would lead a reasonable person to believe that he was not free to leave.

¶ 18 In the recent United States Supreme Court case of *United States v. Drayton*, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), the Supreme Court noted how the location and conduct of a second police officer acted on the reasonable person's belief that he was free to leave. In *Drayton*, Officer Hoover, once aboard the bus, knelt on the driver's seat and faced the rear of the bus. From this position, he could observe the passengers and ensure the safety of the other two police officers without blocking the aisle or obstructing the exit. The defendant argued that Officer Hoover's position caused the interaction to arise to the level of a seizure or detention because a reasonable person would not feel free to leave. The Supreme Court disagreed. "Officer Hoover's position at the front of the bus also does not tip the scales in respondents' favor. Hoover did nothing to intimidate passengers, and he said nothing to suggest that people could not exit and indeed he left the aisle clear." *Id.* 536 U.S. at ——, 122 S.Ct. at 2112.

¶ 19 Likewise, we conclude that Officer Neff's location and conduct in this case does not tip the scales in Appellant's favor. Officer Neff's and Officer Hoover's location and conduct are analogous. Officer Neff had no contact, intimidating or otherwise, with Appellant, and, to ensure the safety of everyone involved, he stood in a location where he could observe what was transpiring. While standing alongside Appellant's vehicle, Officer Neff conversed with the passengers. However, nothing in this conversation would indicate to a reasonable person that they were not free to leave. At the time Officer Neff was talking to the passengers, Officer Wildt was asking Appellant if he would consent to a search of his vehicle. Officer Wildt then told Appellant that he was free to leave. Officer Neff did nothing that would cause a reasonable person to feel that he was not free to leave. Officer Neff's conversation with the passengers was merely that, a conversation. At that point in time, Officer Neff was not conducting an interrogation of the passengers, and, therefore, Officer Neff's conduct was not intimidating.

---

**3.** We note that the trial court did not address Officer Neff's location or conduct during the interaction nor did the court discuss what effect this may have on a reasonable person's belief that he was free to leave. However, since we have found Officer Neff's conduct to be non-coercive, we find that omission did not effect the disposition.

Additionally, his location was on the passenger's side of the vehicle. He was not near the driver's door nor was he standing in front of the vehicle, and, therefore, he did not stand in such a manner that would have prevented Appellant from exiting the scene. Most importantly, Officer Neff did not have any contact with Appellant. His contact was limited to a conversation with the passengers in the vehicle. In fact, the parties stipulated that Officer Neff "in no way impeded [Appellant] from leaving the scene." N.T., 2/6/2001, at 39. Accordingly, we find that Officer Neff's location and conduct did not convey a belief to a reasonable person that they were not free to leave.

¶ 20 Weighing the above factors in light of *Strickler* and *Freeman,* we conclude that the trial court did not err when it found that Appellant was not being seized or detained when Officer Wildt asked him if he would consent to a search of his vehicle. Since we concluded that the request to search was a mere encounter and did not rise to a second or subsequent seizure under the Fourth Amendment, we now proceed to a voluntariness assessment.

¶ 21 In connection with such an inquiry, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. *See Strickler,* 757 A.2d at 901 (citing *Ohio v. Robinette (II),* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. *See Strickler,* 757 A.2d at 901 (citing *Schneckloth,* 412 U.S. at 227–

28, 93 S.Ct. 2041; *Commonwealth v. Cleckley,* 558 Pa. 517, 527, 738 A.2d 427, 433 (1999)). Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant are to be taken into account. *See Strickler,* 757 A.2d at 901 (citing *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). The United States Supreme Court has also rejected the argument that a defendant's consent is necessarily involuntary where it is given at a time when the defendant knows the search will produce evidence of a crime. *See Strickler,* 757 A.2d at 901 (citing *Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (finding that the reasonable person test presupposes an innocent person)).

¶ 22 Since both the tests for a seizure and voluntariness of consent entail an examination of the objective circumstances surrounding the citizen/police interaction, there is a substantial, necessary overlap in the analyses. The aforementioned reasons supporting the conclusion that Appellant was not seized at the time he gave his consent to search the vehicle also support a determination that his consent was voluntary. Nothing in the record supports a determination that Appellant's individual maturity, sophistication or mental state should have any bearing in this regard.

¶ 23 Thus, the Commonwealth's unchallenged evidence was sufficient to satisfy its burden of demonstrating that, under the totality of the circumstances, a reasonable person would have felt free to leave, and Appellant's consent to search was given freely. *See Strickler,* 757 A.2d at 884; *Freeman,* 757 A.2d at 903.

¶ 24 Judgment of sentence affirmed.

¶ 25 BECK J. files a Dissenting Opinion.

BECK, J., Dissenting.

¶ 1 I respectfully dissent based on Officer Neff's location and conduct during the time that Officer Wildt informed appellant he was free to go. I believe that despite Officer Wildt's comment, Officer Neff's continued presence at the vehicle, and the fact that he was engaged in conversation with the passengers, would reasonably lead a driver to believe that he was *not* free to go.

¶ 2 It would be unreasonable for a person to believe that he could get into his car and drive away while another police officer was still investigating the incident, even if one of the other officers on the scene told him he could do so. In essence, Officer Neff's actions contradicted Officer Wildt's statement and at best left appellant uncertain about whether his involuntary interaction with police had ended. What is far more likely—and inherently logical—is that those actions reasonably led appellant to believe that he was required to wait until *all* of the officers on the scene were finished with their investigation before he could depart.

¶ 3 The Commonwealth argues that Officer Neff's conduct is irrelevant since the parties entered into a stipulation at the suppression hearing in lieu of presenting Officer Neff as a witness. The stipulation provided that Officer Neff assisted in the stop and "in no way impeded [appellant] from leaving the scene." The Commonwealth insists that this stipulation establishes that Officer Neff's location at the car with the other passengers "is not supported by the record." Appellee's Brief at 8, n. 2. I cannot agree.

¶ 4 The record clearly establishes, by way of Officer Wildt's own version of events, that at the time Officer Wildt informed appellant of his right to leave and requested his consent to search, Officer Neff was "up talking to passengers in the car." Suppression Hearing Transcript, 2/6/01/, at 12. In light of this testimony, I would not read the stipulation as broadly as the Commonwealth. The agreement merely addressed Officer Neff's direct interaction, or lack thereof, with appellant. It did not negate Officer Wildt's testimony and could not alter the effect Officer Neff's conduct reasonably had on appellant's belief that he was free to go.

¶ 5 I also see a material difference between this case and *United States v. Drayton*, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), upon which the majority relies. First, *Drayton* concerned a bus, not a car. Further, there was no testimony that the officer in *Drayton* engaged in conversation with any of the passengers. Here, if appellant wanted to act on Officer Wildt's statement and indeed leave the area as Officer Wildt said he could, he would have had to get into his vehicle and drive away *while another police officer stood at the car engaged in a conversation with the passengers.* In my view, it is unreasonable to think a motorist would attempt such a thing.

¶ 6 I would find that when coupled with the coercive factors already cited by the majority, *i.e.*, the original traffic stop, the time of night and the presence of three police officers, the additional factor of Officer Neff's position and conduct during the time appellant spoke with Officer Wildt would reasonably have led appellant to believe that he was not free to leave. As a result, police were required to articulate a reasonable basis for appellant's continued detention. *Freeman, supra.* The record reflects none and so suppression should have been granted.