J-S45001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAYVON TYREEK GREEN, | |
| Appellee | No. 1670 WDA 2014 |

Appeal from the Order Entered September 11, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008379-2013

BEFORE: OLSON, DUBOW AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 18, 2016**

The Commonwealth appeals from the order entered September 11, 2014, granting Appellee's motion to suppress. We affirm.[1]

The suppression court made the following factual findings:

[Appellee] lived [on] Mellon Street [in] Pittsburgh, PA. [Appellee's] Honda automobile was parked on Mellon Street in front of his home. Prior to entering his vehicle, he opened the trunk and looked into it.

Pittsburgh police officers were conducting surveillance [on] Mellon Street and had a search warrant for another individual who lived several homes away from [Appellee].

[Appellee] then drove away in his automobile [and] was followed by police officers. Police officers observed [Appellee]

_____

[1] The Commonwealth certified that the order in question would terminate or substantially handicap its prosecution of Appellee. Thus, we have jurisdiction over this appeal. ***See*** Pa.R.A.P. 311(d).

*Retired Senior Judge assigned to the Superior Court.

get out of his car and speak with another person, and then something was placed into the trunk of [Appellee's] car.

[Appellee] then pulled away without activating a turn signal. Due to this traffic violation, [Appellee] was stopped by police officers.

The police officers approached the vehicle; one went to the driver's side and the other went to the passenger's side. The one on the driver's side requested [Appellee's] driver's license, registration, and insurance papers, which were produced by [Appellee. Based upon the identification documents, officers realized Appellee was a witness or victim of a recent shooting incident.]

The officers were able to look into [Appellee's] vehicle and did not observe any guns, drugs, or other illegal activity.

After a short bit of time, [Appellee] was ordered out of his vehicle and was patted down for officer's safety.

The record is devoid of any facts that would suggest other than a mere traffic violation had occurred.

After [Appellee] had been removed from his car and the officers had control of his documentation, which had been provided by [Appellee] regarding the traffic stop, [Appellee], as well as any other reasonable person, would believe that they were not free to leave the scene of the traffic stop.

Police officers searched the interior of the vehicle; however, [they] found no guns, drugs or any other indicia of other illegal activity.

One of the police officers opened the trunk of [Appellee's] vehicle, using [Appellee's] keys, which [the officer took] from the automobile. Heroin was found in the trunk by the officer. The officers indicated that they had obtained consent to search the trunk.

Suppression Court Opinion, 2/13/2015, at 4-5; N.T., 9/11/2014, at 2-4.

Following this incident, Appellee was charged with one count of possession with intent to deliver a controlled substance,[2] one count of possession of a controlled substance,[3] and one count of turning movements and required signals.[4] Appellee filed a motion to suppress the evidence, claiming the traffic stop was pre-textual; the removal of Appellee from the car and search of his person was unlawful; the search of the vehicle was not consensual and was the result of the illegal detention; and the search of his property at his Mellon Street residence was unlawful because the warrant permitting it was based on the illegal seizure and search of the vehicle. A hearing on the motion to suppress was held on April 30, 2014, in which the suppression court granted the motion to suppress. The Commonwealth timely appealed the granting of the motion.[5]

The Commonwealth presents two issues for our review:

> 1. Whether the police lacked a legally supportable basis to detain [A]ppellee based upon their observation of seeing him

_____

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(16).

[4] 75 Pa.C.S.A. § 3334(a).

[5] On October 14, 2014, the suppression court ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On October 31, 2014, the Commonwealth filed its concise statement. On February 13, 2015, the suppression court issued its rule 1925(a) opinion. Both of the Commonwealth's issues were included in its concise statement.

pull away from the curb into the lane of traffic without using his turn signal?

2. Whether [A]ppellee's consent to the search of the vehicle was unlawful?

Commonwealth's Brief at 4.

When reviewing the ruling of a suppression court, we must determine whether the record supports the court's findings. *Commonwealth v. Perez*, 845 A.2d 779, 788 (Pa. 2004). If the record supports the findings, we are bound by those facts and may only reverse if "the legal conclusions drawn therefrom are erroneous." *Id.* We are not bound by the legal conclusions of the suppression court. *In re T.B.*, 11 A.3d 500, 505 (Pa. Super. 2010). Further, when the Commonwealth appeals a suppression order, we only consider "the evidence of the [appellee's] witnesses and so much of the evidence of the [Commonwealth] as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. James*, 486 A.2d 376, 379 (Pa. 1985).

The Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. *Commonwealth v. By*, 812 A.2d 1250, 1254 (Pa. Super. 2002). As a general rule, all searches and seizures performed without a warrant are *per se* unreasonable and unconstitutional, unless an exception applies. *Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014). One exception is a search conducted after consent is

- 4 -

voluntarily given. ***By***, 812 A.2d at 1254. Consent cases require a two-prong inquiry: first, "the constitutional validity of the citizen/police encounter giving rise to the consent" and second, the voluntariness of the consent. ***Id.*** When the police encounter is lawful, the exclusive focus is the voluntariness. ***Id.*** However, if the initial detention violates the Fourth Amendment, then "any evidence seized during that stop must be excluded as fruit of an unlawful detention[,] absent a demonstration by the government both of a sufficient break in the causal chain between the illegal detention and the seizure of evidence." ***Id.*** at 1255. Such a break ensures that the search is not exploitive of the illegal detention and that the consent was voluntary. ***Id.***

To assess the lawfulness of citizen and police encounters, the central issue is whether the citizen has been seized. ***Commonwealth v. Strickler***, 757 A.2d 884, 889 (Pa. 2000). Mere encounters, or those instances of police questioning which involve no seizure or detention, do not need to be supported by any level of suspicion. ***Id.*** Two other categories of police/citizen interaction involve a measure of detention or seizures: an investigative detention, which "subjects an individual to a stop and a period of detention but [] is not so coercive as to constitute the functional equivalent of an arrest" and a custodial detention, which is a more restrictive form. ***Id.*** An investigative detention must be supported by reasonable suspicion that the person is engaged in criminal activity and may continue "only so long as is necessary to confirm or dispel such suspicion." ***Id.*** A

custodial detention, on the other hand, is only legal if based on probable cause. *Id.*

The objective test to determine whether a seizure has occurred requires a determination of whether, looking to all surrounding circumstances, a reasonable person would believe that he was free to leave. *Id.* The focus is on whether or not the citizen's movement was restricted, by means of physical force or a show of authority. *Id.* at 890. Courts must look at the totality of the circumstances to make the determination, as no single factor may dictate the conclusion. *Id.*

In its first issue, the Commonwealth argues that Appellee was not unlawfully stopped or detained when he consented to a search of the vehicle. Commonwealth's Brief at 10-11. There is no dispute between the parties that Appellee failed to use his turn signal when pulling his car into the roadway, making the initial stop lawful. Any technical traffic violation (supported by probable cause) legitimizes a stop, even if it is merely a pretext for some other investigation. *Whren v. United States*, 517 U.S. 806 (1996). This applies even if the offense is only minor, as it was here. *Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008).

However, it is clear that a seizure that is lawful at its start can later violate the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). A traffic stop is a relatively brief encounter and a seizure for such a violation justifies a police investigation of that particular violation.

*Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015). The permissible duration of a traffic stop is determined by the seizure's "mission, [which is to] address the traffic violation that warranted the stop." *Id.* Because of this purpose, the stop may not last longer than necessary to accomplish that purpose. *Id.* Thus, authority for the seizure ends "when tasks tied to the traffic infraction are–or reasonably should have been–completed." *Id.* On scene investigation into other crimes detours the traffic mission. *Id.* at 1616.

Here, officers lawfully stopped Appellee for a violation of the traffic laws. N.T., 4/30/2014, at 6, 42. Then, police officers asked him to step out of his car to discuss a completely different incident (a shooting), which involved his brother. Nothing in the record indicates Appellee was ever told of the traffic violation or the true reason he was pulled over. There is no testimony that officers resolved the traffic violation by issuing a ticket or summons.[6] Instead, the record indicates that the shooting incidence became the sole or primary focus of the officers' attention once they discovered Appellee's identity and relation to the shooting incident. N.T., 4/30/2014, at 48. The record is equally clear that the officers neither observed nor acquired evidence of any illegal activity, except Appellee's

_____

[6] We acknowledge that Appellee was eventually charged for failing to use his turn signal; however, there is nothing in the record that shows the officers on the scene completed the traffic stop and gave him a ticket.

failure to signal. N.T., 4/30/2014, at 20-21, 44. An unrelated check, such as investigating another crime, is permissible if it does not extend the time necessary to complete the traffic stop. *Rodriguez*, 135 S.Ct. at 1615. Here, Appellee gave officers his identification information, but it was not returned to him until after police questioned him about an unrelated shooting incident. N.T., 4/30/2014, at 16. Even if this questioning lasted only a short period of time, it extended the traffic stop beyond what is typical for such a minor offense. Investigating the other crime detoured the traffic mission and extended the time necessary to complete the stop, thus making Appellee's detention unlawful. *Rodriguez*, 135 S.Ct. at 1616.

Further, Appellee's nervousness and the police officers' apparent hunch that "there was more going on" is not adequate to justify their search of the trunk or detention of Appellee. Nervousness, even when excessive, without more than a "hunch," cannot give rise to a reasonable suspicion of criminal activity. *Commonwealth v. Reppert*, 814 A.2d 1196, 1205-1206 (Pa. Super. 2002). The suppression court correctly found "the police observed a traffic violation and no other illegal activity, so without further reasonable suspicion or probable cause, [they] were not permitted to escalate to a custodial detention." Suppression Court Opinion, 2/13/2015, at 5.

In its second issue, the Commonwealth argues that Appellee gave lawful consent to search his vehicle. When the underlying encounter is

found to be unlawful, "the exclusionary rule requires suppression of evidence obtained" unless the Commonwealth can show a "sufficient break in the causal chain" between the illegal detention and the seizure of the evidence to ensure the search is not "an exploitation of the prior illegality" and is voluntary. ***Strickler***, 757 A.2d at 889.

Here, nothing in the record or the Commonwealth's brief shows that there was a sufficient break in the causal chain or that the consent was voluntary. The facts do not suggest that a reasonable person would have felt that he was free to leave. Police officers failed to explain the nature or reason for the stop to Appellee, and then proceeded to question him about an unrelated shooting incident without resolving the original traffic violation. Under the circumstances, the Commonwealth failed to show a sufficient break in the causal chain between the illegal detention and the seizures of evidence so as to ensure that the consent in this case was both voluntary and not an exploitation of Appellee's unlawful detention. Accordingly, the suppression court did not err in granting the motion to suppress.

Order affirmed.

Judge Dubow joins this memorandum.

Judge Platt concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: _7/18/2016_