J-S19009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| TRE JAMAL PIPER | : | |
| | : | |
| Appellant | : | No. 1189 MDA 2016 |

Appeal from the Judgment of Sentence July 8, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0004732-2015

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and STEVENS, P.J.E.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 12, 2017**

Appellant, Tre Jamal Piper, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his stipulated bench trial conviction for possession of a small amount of marijuana for personal use.[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> On the night of July 7, 2015, Officer Tyler Zehring ("Officer Zehring") was patrolling the 500 block of Canal Street when he noticed a vehicle riding the solid double yellow lines and [with] illegal tinted rear taillights.  Officer Zehring turned on his lights and attempted to pull over the vehicle in a safe location.  The vehicle proceeded for another three (3) blocks and pulled over next to a guardrail.  As Officer Zehring was pulling over the suspect

_____

[1] 35 P.S. § 780-113(a)(31)(i).

_____

*Former Justice specially assigned to the Superior Court.

vehicle, he noticed a lot of sudden movement. The driver of the vehicle was Appellant…and a passenger in the vehicle was Mr. Pough.[2] [Appellant] had no outstanding warrants and was asked to step outside of the vehicle to speak with the officer. Officer Zehring explained to [Appellant] the reason why he was asked to exit the vehicle (due to signs of impairment). Officer Zehring proceeded to give [Appellant] a portable breath test and the results came back zero.

At this point, Officer Zehring gives [Appellant] back his identification, gives him a warning, and tells him that he was free to leave. Officer Zehring, while standing with the door to his patrol vehicle open, decided to ask [Appellant] one more question.[3] [Appellant] responded, "[S]ure." Officer Zehring asked if there was anything in the vehicle that he should be made aware of. [Appellant] replied that there was a scale left by a female [who] had been a passenger in his vehicle. Officer Zehring proceeded to ask for consent to search the vehicle and [Appellant] consented to [the] search. The search of the vehicle produced a scale, [loose] marijuana, and a marijuana "roach."

During the traffic stop, Officer Zehring's vehicle never blocked [Appellant's] vehicle in that [Appellant] was unable to leave the scene. Officer Zehring also testified that he spoke in a non-threatening tone, he never displayed his weapon, never made any threats, and never demanded anything from [Appellant]. Officer Zehring's demeanor was calm and relaxed and he never restricted [Appellant's] movements throughout the stop.

---

[2] Appellant and Mr. Pough were co-defendants at trial. Mr. Pough filed an appeal at docket No. 1191 MDA 2016.

[3] Officer Zehring asked Appellant if he could ask him one more question, to which Appellant responded, "Sure." At this point, a back-up patrol vehicle arrived on the scene with two officers. The back-up patrol vehicle was parked behind Officer Zehring's vehicle, which was parked behind Appellant's vehicle. The back-up officers remained at their patrol vehicle when Officer Zehring posed this question to Appellant.

(Trial Court Opinion, filed September 30, 2016, at 2-3) (internal footnotes omitted).

Procedurally, the Commonwealth charged Appellant with possession of a small amount of marijuana and possession of drug paraphernalia.[4] Appellant filed a suppression motion on December 24, 2015. The court held a suppression hearing on February 19, 2016. On March 28, 2016, the court denied the motion to suppress. The court decided the totality of the circumstances demonstrated that Officer Zehring's second interaction with Appellant following the initial traffic stop (when Officer Zehring asked if he could ask Appellant one more question) was a "mere encounter"; and Appellant's consent to search the vehicle was voluntary. Appellant proceeded to a stipulated bench trial on July 8, 2016, after which the court convicted him of possession of a small amount of marijuana for personal use. The court sentenced Appellant that day to 30 days' probation plus fines and costs. Appellant timely filed a notice of appeal on July 19, 2016. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on August 3, 2016.

Appellant raises one issue for our review:

_____

[4] Prior to trial, the Commonwealth withdrew the possession of drug paraphernalia charge.

J-S19009-17

> WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OBTAINED AS THE RESULT OF AN ILLEGAL DETENTION UNSUPPORTED BY PROBABLE CAUSE, REASONABLE SUSPICION, OR ANY ARTICULABLE BASIS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION?

(Appellant's Brief at 5).[5]

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Williams**, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 115 (Pa.Super. 2005)).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Williams, supra** at 27 (quoting **Jones, supra**).

---

[5] The Commonwealth claims Appellant waived his issue on appeal due to vagueness in Appellant's Rule 1925(b) statement. Appellant's grounds for challenging the search of his vehicle at the suppression hearing were clear. The court had no doubt about what Appellant sought to challenge on appeal and adequately addressed Appellant's issue in its opinion. Thus, we decline to find waiver. **See Commonwealth v. Laboy**, 594 Pa. 411, 936 A.2d 1058 (2007) (holding appellate court should conduct merits review of claim on appeal notwithstanding vagueness in Rule 1925(b) statement, where case was relatively straightforward and trial court readily understood and addressed claim in substantial detail in its opinion).

- 4 -

Appellant argues Officer Zehring's "second round" of questioning constituted an investigative detention or the functional equivalent of an arrest, because no reasonable person would have believed he was free to leave the scene. Appellant asserts Officer Zehring lacked any reasonable articulable basis to conclude illegal activity had occurred or was occurring at the time he re-engaged Appellant. Appellant maintains Officer Zehring did not smell alcohol on Appellant or see any illegal drugs or paraphernalia in his vehicle. Appellant highlights that he did not give strange or incoherent statements or act overly nervous. Appellant does not dispute the validity of the initial traffic stop, due to violations of the Motor Vehicle Code. Appellant suggests the officer's suspicions that Appellant might have been impaired were dispelled once the portable breath test confirmed Appellant's blood alcohol level was zero. Given these circumstances, Appellant insists Officer Zehring lacked reasonable suspicion for a second investigative detention. Appellant submits his consent to search the vehicle was involuntary, because it was tainted by the second and illegal investigative detention. Appellant claims he consented to the search only moments after the officer had re-initiated questioning and there were no intervening circumstances to diminish the coercive atmosphere of situation. Appellant posits insufficient attenuation between the illegal detention and his consent to purge the taint of the officer's unlawful conduct. Appellant concludes the trial court erred in denying his motion to suppress, and this Court must reverse. We disagree.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures." *Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa.Super. 2014), *appeal denied*, 630 Pa. 734, 106 A.3d 724 (2014). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. By*, 812 A.2d 1250, 1255 (Pa.Super. 2002), *appeal denied*, 576 Pa. 710, 839 A.2d 350 (2003). Contacts between the police and citizenry fall within three general classifications:

> The first level of interaction is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000), *appeal denied*, 567 Pa. 712, 785 A.2d 89 (2001)).

Significantly:

> Where the purpose of an initial, valid traffic stop has ended

and a reasonable person would have believed that he was free to leave, the law characterizes a subsequent round of questioning by the officer as a mere encounter. Since the citizen is free to leave, he is not detained, and the police are free to ask questions appropriate to a mere encounter, including a request for permission to search the vehicle. However, where the purpose of an initial traffic stop has ended and a reasonable person would not have believed he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest. In the absence of either reasonable suspicion to support the investigative detention or probable cause to support the arrest, the citizen is considered unlawfully detained. Where a consensual search has been preceded by an unlawful detention, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the [C]ommonwealth both of a sufficient break in the causal chain between the illegality and the seizure of evidence. This assures of the search's voluntariness and that the search is not an exploitation of the prior unlawful detention.

*By, supra* at 1255-56 (internal citations omitted). Thus, "Fourth Amendment inquiries in consent cases entail a two-prong assessment: first, the constitutional validity of the citizen/police encounter giving rise to the consent and, second, the voluntariness of said consent." *Id.* at 1254.

In determining the constitutional validity of the citizen/police encounter and evaluating whether a reasonable person would have believed he was free to leave, we perform an objective totality-of-the-circumstances test. *Commonwealth v. Strickler*, 563 Pa. 47, 58-59, 757 A.2d 884, 889-90 (2000). Some relevant factors include, but are not limited to, the presence or absence of police excesses, physical contact or police direction of a citizen's movements, "the demeanor of the police officer, the location of

the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." *Id.* at 73, 757 A.2d at 898 (internal citation omitted). "Additionally, in the context of a police/citizen interaction that follows a lawful detention, …the existence and character of the initial investigative detention merits separate consideration as a relevant factor." *Id.* Further, although "the admonition to a motorist that he is free to leave is not a constitutional imperative, the presence or absence of such a clear, identified endpoint to the lawful seizure remains a significant, salient factor in the totality assessment." *Id.* at 74, 757 A.2d at 899. Importantly, "[t]he presence of an express admonition to the effect that the citizen-subject is free to depart is a potent, objective factor that favors such conclusion." *Id.* at 75, 757 A.2d at 899.

"Where the underlying encounter is found to be lawful, voluntariness [of the consent] becomes the exclusive focus." *By, supra* at 1254.

> In connection with such an inquiry, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice— not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant are to be taken into account. …
>
> Since both the tests for a seizure and voluntariness of consent entail an examination of the objective circumstances surrounding the citizen/police encounter,

there is a substantial, necessary overlap in the analyses.

*Id.* at 1258 (internal citations omitted). **See also Strickler, supra** (reversing trial court's suppression of evidence where, following initial lawful traffic stop, officer asked if defendant had anything illegal in his vehicle, and defendant subsequently gave consent to search vehicle which revealed drug paraphernalia; circumstances of initial traffic stop showed no evidence that officer displayed weapons, unusual commands, aggressive behavior or any use of language or tone that was not commensurate with circumstances; second officer was present for part of encounter, but evidence suggests he was not active participant; although officer did not expressly advise defendant and his companion that they were free to leave following initial stop, officer's actions suggested as much in that he returned defendant's identification/documentation, thanked him for his cooperation, and turned away prior to reinitiating interaction and ultimately requesting consent to search; officer also told defendant he did not have to consent to search which counterweighed officer's failure to expressly advise defendant he was free to leave; notably, officer did not touch defendant or direct his movements, there was no evidence of any use of coercive language or tone by officer; officer's re-engaging of defendant following initial traffic stop was mere encounter and did not constitute second or subsequent seizure; turning to voluntariness assessment, reasons supporting conclusion that defendant was not seized at time he gave consent to search vehicle also

militate strongly in favor of finding his consent was voluntary; Commonwealth's unrebutted evidence was sufficient to show that defendant was not subject to seizure for purposes of Fourth Amendment when police sought and he gave his consent; Appellant's consent was voluntary).

Instantly, the Commonwealth presented, *inter alia*, the following evidence at the suppression hearing: (1) on the night of July 7, 2015, Officer Zehring was patrolling the 500 block of Canal Street when he noticed a vehicle riding the solid double yellow lines and that had illegally tinted rear taillights; (2) Officer Zehring turned on his lights and attempted to pull over the vehicle in a safe location; (3) the vehicle proceeded for another three blocks and pulled over next to a guardrail; (4) as Officer Zehring was pulling over the suspect vehicle, he noticed a lot of sudden movement; (5) Officer Zehring asked Appellant to step outside of the vehicle to speak with the officer due to signs of Appellant's impairment in operating the vehicle; (6) Officer Zehring proceeded to give Appellant a portable breath test and the results came back zero; (7) Officer Zehring subsequently gave Appellant back his identification **and told him he was free to leave**; (8) Officer Zehring walked back to his patrol vehicle and while standing with the door to his vehicle open, Officer Zehring asked Appellant if he could ask him one more question, to which Appellant responded, "Sure"; (9) at this point, a back-up patrol vehicle arrived on the scene with two officers; (10) the back-up patrol vehicle was parked behind Officer Zehring's vehicle, which was

parked behind Appellant's vehicle; (11) the back-up officers remained at their patrol vehicle when Officer Zehring posed this question to Appellant; (12) Officer Zehring then asked Appellant if there was anything in his vehicle that Officer Zehring should know about; (13) Appellant admitted there was a digital scale in his car left by a female who had been a passenger in his vehicle; (14) Officer Zehring proceeded to ask for consent to search the vehicle, which Appellant provided; and (15) the search of the vehicle produced a digital scale, loose marijuana, and a marijuana "roach."

Additionally, the record shows that Officer Zehring's vehicle did not block Appellant's vehicle during the stop or prevent Appellant from leaving the scene. Officer Zehring also testified that he spoke to Appellant in a non-threatening tone and maintained a relaxed and calm demeanor throughout their interaction. Officer Zehring said he did not display his weapon or make any demands of Appellant. Although a back-up patrol vehicle arrived on scene, Officer Zehring stated the back-up officers remained near their vehicle while Officer Zehring re-engaged Appellant, suggesting they were inactive participants at that point. Most importantly, following the initial stop, Officer Zehring expressly told Appellant that he was free to leave. Under the totality of the circumstances, a reasonable person would think he was free to leave. Thus, when Officer Zehring re-engaged Appellant, the interaction was a mere encounter that required no level of reasonable suspicion or probable cause. *See Strickler, supra*; *Bryant, supra*; *By,*

***supra***.

In evaluating whether Appellant's consent to search was voluntary, the trial court explained:

> A single police officer initially pulled over Appellant and asked him to exit the vehicle. At no time during the stop or subsequent discussion did the police officer ever touch Appellant. The police officer never displayed his weapon, never made any sort of threats, and never demanded anything from Appellant. The police officer had a calm and relaxed demeanor throughout the stop. The police officer also never restricted Appellant's movements in any way. There is no evidence of any use of coercive language or tone by the officer. After the police officer gave Appellant a warning and handed back his ID, the police officer told Appellant he was free to leave. Both the police officer and Appellant had their doors open ready to leave when the police officer asked Appellant if there was anything else that he should know about. Here, Appellant told him that a friend had left a scale in the car. When asked if he would consent to a search of his vehicle, Appellant freely gave such consent. There was no indication that said consent was coerced or forced. … As such, Appellant's consent was voluntary and this [c]ourt properly denied Appellant's motion to suppress.

(Trial Court Opinion at 5-6) (internal citations and footnote omitted). The record supports the suppression court's decision that Appellant's consent to search was voluntary. ***See Williams, supra***. ***See also Strickler, supra***; ***By, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/12/2017</u>