J-A12010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDRE DELAYNE TAYLOR | |
| Appellant | No. 529 WDA 2016 |

Appeal from the Judgment of Sentence Dated March 15, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006230-2015

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY SOLANO, J.: **FILED OCTOBER 12, 2017**

Appellant Andre Delayne Taylor appeals from the judgment of sentence imposed after the trial court convicted him of four offenses under the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-113(a). Appellant's sole claim is that the trial court erred in denying his motion to suppress evidence obtained from a traffic stop. Upon review, we reverse.

The trial court recited the procedural history of this case as follows:

On April 28, 2015, Appellant, Andre Taylor, was arrested and charged with one count of Possession with Intent to Deliver a Controlled Substance (PWID), two counts of Possession of a Controlled Substance, one count of Possession of Marijuana, and one count of Possession of Drug Paraphernalia. The Possession of Drug Paraphernalia was dismissed at the Preliminary Hearing. Appellant filed a Motion to Suppress on September 2, 2016. After a hearing on the motion and careful consideration of Appellant's Brief and the Commonwealth's Memorandum of Law filed on the issue, this Court denied the Motion to Suppress on

December 14, 2015. The case proceeded to a stipulated nonjury [trial] after which this Court found Appellant guilty of the remaining charges. Appellant was sentenced on March 15, 2015 to 25 to 65 months of incarceration with three years consecutive probation at the PWID count and no further penalty on the rest of the charges. Appellant filed a Notice of Appeal on April 14, 2016 and a Statement of Errors Complained of on Appeal on May 6, 2016.

Trial Court Opinion, 8/31/16, at 2-3 (footnotes omitted).

On appeal, Appellant presents a single issue for our review:

Whether the trial court erred in not granting [Appellant's] motion to suppress when the testimony of Officer Gould, the only witness called by the Commonwealth at the suppression hearing, established that he had extended the otherwise-completed traffic stop of the car in which [Appellant] was a passenger even though he lacked reasonable suspicion of criminal activity, based on specific and articulable facts rather than his mere "intuition" and "hunch," to justify the continued seizure of [Appellant] (as well as the car and driver), in violation of his federal and state constitutional rights against unreasonable search and seizures?

Appellant's Brief at 5.

We preliminary recognize:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Ranson*, 103 A.3d 73, 76 (Pa. Super. 2014) (internal citations and quotations omitted), *appeal denied*, 117 A.3d 296 (Pa. 2015). The Commonwealth carries the burden at suppression and satisfies that burden if it proves to the satisfaction of the suppression court that the evidence was properly seized. *In re L.J.*, 79 A.3d 1073, 1086 (Pa. 2013), *citing Commonwealth ex rel. Butler v. Rundle*, 239 A.2d 426 (Pa. 1968) and Pa.R.Crim.P. 581(J) (official comment).

The Commonwealth presented a single witness at the suppression hearing.[1] McKeesport Police Detective Schelley Gould testified to having 21 years of experience as a police officer and stated that narcotics investigations comprised about 30% of his work. N.T., 10/1/15, at 3-4. On April 28, 2015, Detective Gould initiated a traffic stop of a gray Suzuki because the vehicle's inspection had expired. *Id.* at 4-5. Appellant was a front seat passenger in the vehicle. *Id.* Detective Gould testified that the stop occurred in "a quiet neighborhood" where law enforcement "don't have many problems."[2] *Id.* at 5. Detective Gould stated that when he approached the driver, the driver was "shaking really bad." *Id.* at 6. He

---

[1] Appellant did not present any witnesses.

[2] Detective Gould also testified, "but where I initially saw them, they were coming from a high drug trafficking area[.]" N.T., 10/1/16, at 5.

- 3 -

noted that Appellant "also was shaking really bad, which kind of throws up a red flag." *Id.* at 6. Nonetheless, when Detective Gould obtained the driver's license and "called in" the driver's information, he learned that the license was valid and the driver was not wanted on any warrants. *Id.* at 15. Detective Gould then returned the driver's information to him, and "proceeded over to" Appellant and asked him for his information and "informed him to stop moving around." *Id.* At that point, Detective Gould, who "knew there was another [police] car coming," "got on the radio and told them to expedite." *Id.* at 16. Detective Gould stated:

> I remained at the rear of the vehicle until the [police] cars got there. . . . . I didn't [give a traffic citation to the vehicle's driver] until I got another car there. I had two very nervous grown men in a car and no clue as to what's going on inside this car.

*Id.* at 17. Detective Gould testified "[i]n my 21 years of experience, I had an **intuition** that crime was at foot." *Id.* (emphasis added). On cross-examination, he conceded that he never saw a weapon or drugs, but relied on his intuition and a hunch. *Id.* at 19. When Detective Gould's fellow officer arrived, Detective Gould then approached Appellant and "asked [Appellant] is there anything on your person I need to be concerned about." *Id.* at 8. At that point, Appellant replied that he had "a little bit of weed," and the officers arrested him. *Id.* at 9.

It is well-settled that there are three categories of interaction between citizens and police officers. Our Supreme Court has summarized:

- 4 -

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Ranson*, 103 A.3d at 76–77.

Instantly, the parties do not dispute that the initial traffic stop was lawful. However, Appellant argues that he was subjected to an illegal investigative detention after Detective Gould completed the "tasks tied to the traffic infraction," because the officer lacked reasonable suspicion to continue the detention. Appellant's Brief at 13-14. The Commonwealth counters that Appellant's "continued movement" and the "extreme nervousness exhibited by [A]ppellant and the driver" created reasonable suspicion for Detective Gould to continue the investigation. Commonwealth Brief at 8. After careful review of the record, we disagree.

We have explained:

[W]here the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest. In the absence of either reasonable suspicion to support the investigative detention or probable cause to support the arrest, the citizen is considered unlawfully detained.

*Commonwealth v. By*, 812 A.2d 1250, 1256 (Pa. Super. 2002) (citation omitted), *appeal denied*, 839 A.2d 350 (Pa. 2003). Appellant's argument

is that he was illegally detained after the initial traffic stop "simply because [the driver and Appellant] were 'shaking really bad.'" Appellant's Brief at 30, *citing* N.T., 10/1/15, at 6. In support of his contention that the traffic stop was improperly extended, Appellant cites *Rodriguez v. United States*, 135 S. Ct. 1609 (2015) and *Commonwealth v. Reppert*, 814 A.2d 1196, 1204 (Pa. Super. 2002) (*en banc*). Appellant's Brief at 20-30. In *Rodriguez*, the United States Supreme Court held that where police officers lack reasonable suspicion of criminal activity, they may not extend a traffic stop beyond its intended purpose. *Rodriguez*, 135 S. Ct at 1616. In *Reppert*, this Court explained:

> Our Supreme Court has mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a "*particularized and objective basis*" for suspecting the individual stopped. Thus, to establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.
>
> Although a police officer's knowledge and length of experience weigh heavily in determining whether reasonable suspicion existed, our Courts remain mindful that the officer's judgment is necessarily colored by his or her primary involvement in "the often competitive enterprise of ferreting out crime." Therefore, the fundamental inquiry of a reviewing court must be an objective one, "namely, whether 'the facts available to the officer at the moment of the [intrusion] warrant a man of

reasonable caution in the belief that the action taken was appropriate.'" **This inquiry will not be satisfied by an officer's hunch or unparticularized suspicion.**

*Reppert*, 814 A.2d at 1203–1204 (citations omitted).

Here, Detective Gould testified that he stopped the vehicle in which Appellant was a passenger for an expired inspection sticker. N.T., 10/1/15, at 4, 12. He testified that the driver pulled over immediately, and "the area where the stop was is a quiet neighborhood" where the police "don't have many problems." *Id.* at 5, 12. The driver of the vehicle was "shaking really bad" and Appellant was "moving around a lot in the front" of the vehicle. *Id.* at 6-7. Officer Gould said that a "red flag went up" because "you have two people who are very nervous inside the car, as bad as they were shaking, it just gave me an indication there was something in the car." *Id.* at 7. However, Detective Gould also testified that when he "ran" information from both the driver and Appellant, the driver had a valid license and "both came back no warrants." *Id.* at 7, 15.

Upon further questioning, Detective Gould stated the following:

[Defense counsel]: So you said they were nervous and they were shaking and you had no clue what was going on inside the vehicle?

OFFICER GOULD: In my 21 years of experience, **I had an intuition that a crime was at foot. I did not know whether there was a weapon in the car and I wasn't about to take any chances.**

[Defense counsel]: You never saw a weapon?

OFFICER GOULD: No, sir.

[Defense counsel]: Never saw any drugs?

OFFICER GOULD: No, sir.

[Defense counsel]: **You relied on your intuition?**

OFFICER GOULD: **Yes, sir.**

[Defense counsel]: **A hunch, correct?**

OFFICER GOULD: **Yes, sir.**

N.T., 10/1/15, at 17-18 (emphasis added). By the officer's own admission, he based the continued detention of Appellant not on a particularized reasonable suspicion of a crime, but rather on his "intuition," a "hunch," and a desire "not to take any chances." Under our case law, that is not a sufficient basis for an investigative detention.

In an attempt to distinguish *Rodriguez*, the trial court states that the vehicle stop was not "unduly delayed by . . . justifiable concerns for officer safety" and that Detective Gould's questioning of Appellant was "related to immediate roadway and officer safety." Trial Court Opinion, 8/31/16, at 6. Those factors are not sufficient to validate Detective Gould's detention of Appellant. We recognize that officers making traffic stops may have justifiable safety concerns. *See Rodriguez*, 135 S. Ct. at 1616. But the question here is not whether the facts facing Detective Gould could possibly give rise to a reasonable suspicion of dangerous criminal activity; it is whether, based on the testimony, Detective Gould acted on a particularized objective assessment, rather than mere intuition. By Detective Gould's own

admission, he had no more than his intuition and a hunch, and the law is clear that a police officer may not reach a conclusion that criminal activity is afoot based upon an "unparticularized suspicion" or "hunch." **See Commonwealth v. Arch**, 654 A.2d 1141, 1144 (Pa. Super. 1995), **citing Terry v. Ohio**, 392 U.S. 1, 27 (1968).

Reasonable suspicion requires that the officer "articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Reppert**, 814 A.2d at 1204. The only specific observation articulated by Detective Gould was the nervous behavior and movement exhibited by the driver of the vehicle and Appellant. As we stated in **Reppert**, "[a] police officer's observation of a citizen's nervous demeanor and furtive movements, without more, establishes nothing more than a 'hunch,' employing speculation about the citizen's motive in the place of fact." **Reppert**, 814 A.2d at 1206. We will not find reasonable suspicion based on "law enforcement officers' wholly subjective interpretation[s] of inoffensive conduct[.]" **Id**.

In addition, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." **Rodriguez**, 135 S. Ct. at 1612. An officer cannot "prolong the stop, absent the reasonable suspicion ordinarily demanded to

justify detaining an individual." *Id*. at 1615. Here, there was no reasonable suspicion to justify the investigative detention that ensued when Detective Gould asked Appellant whether "there was anything" Detective Gould needed to be concerned about. N.T., 10/1/15, at 8. ***See, e.g.***, ***Commonwealth v. Dales***, 820 A.2d 807, 814-815 (Pa. Super. 2003) (where purpose of traffic stop had been completed, behaviors learned during "second round of questioning" cannot be considered in reasonable suspicion analysis).

Based on our precedents, we agree with Appellant that the Commonwealth failed to establish reasonable suspicion to support Detective Gould's extension of Appellant's lawful detention, and thus reverse the trial court's suppression order and remand for a new trial.

Judgment of sentence vacated. Suppression order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2017

- 10 -