J-A24043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE L. SOLIS ARROYO | : | No. 652 EDA 2023 |

Appeal from the Order Entered February 16, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003019-2021

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED SEPTEMBER 19, 2025**

In this procedurally unorthodox case, the Commonwealth appeals the grant of Jose L. Solis Arroyo's ("Arroyo") post-sentence motions for reconsideration of suppression and judgment of acquittal/arrest of judgment. After careful review, we determine the trial court committed an error of law when it reversed itself after trial and suppressed evidence, having determined police subjected Arroyo to a custodial detention requiring *Miranda* warnings. Arroyo rear-ended another car and left the scene of an accident. His actions required separate investigating officers: one to interview the driver Arroyo hit, the other to locate and speak with Arroyo at his residence regarding the accident, neither of whom performed a custodial detention. Thus, we reverse the post-sentence judgment of acquittal, the suppression of Arroyo's statements to investigating officers, and the suppression of the results of Arroyo's chemical blood testing, and remand for the reimposition of sentence.

The testimony presented at the suppression hearing[1] established that on April 18, 2021, at approximately 9:00 p.m., Christoper Martin ("Martin") was driving on Easton Road in Doylestown, and while waiting at the traffic light, a man driving a white pickup truck bumped into his car, causing a slight jolt. *See* N.T., 4/21/22, at 10, 14. When the light changed, Martin pulled over into a nearby parking lot expecting the other driver to do the same, but the pickup truck continued to drive away. *See id*. at 11, 17-18.

Once he realized the driver was not stopping, Martin got back on the road and followed the truck, which he observed to be driving erratically, for several minutes. *See id*. at 11-12. While following the man driving the pickup truck, Martin called 911 and identified the vehicle that struck him as a white Dodge truck with the license plate "ZPW5280." *See id*. at 12, 14-15. Martin told the dispatcher he flashed his lights and honked his horn but the driver still did not pull over. *See id*.

Martin then pulled into a 7-Eleven store parking lot and waited for police. *See id*. at 15, 19. At approximately 9:45 p.m., Doylestown Township Police Officer Jared Courts ("Officer Courts"), arrived and spoke with Martin. *See id*. at 19, 24. The dispatcher ran the license plate Martin provided, determined

_____

[1] By agreement of the parties, the court incorporated the testimony from the combined supplemental preliminary hearing/suppression hearing into the trial record. *See* N.T., 4/21/22, at 7, 20, 75.

"ZPW5280" was registered to Arroyo, and gave Arroyo's address. *See id*. at 24-25.

While Officer Courts met Martin in the parking lot to investigate the accident, Officer Donald Lawson ("Officer Lawson"), who also received Arroyo's address from the dispatcher, drove to Arroyo's residence to see if he could locate the driver and assist in the investigation. *See id*. at 28-29. Upon arrival at approximately 10:08 p.m., Officer Lawson saw the white pickup truck registered to Arroyo with license plate ZPW5280 in front of Arroyo's residence. *See id*. at 29-31. Officer Lawson, who was in uniform in a marked police car and wearing his body camera,[2] knocked on the door and backed away from the steps and waited for someone to answer. *See id*. at 31. Arroyo's wife answered the door. Officer Lawson said he was investigating an automobile accident and asked to speak with the driver of the pickup truck. *See id*. at 32. In response, Arroyo came to the open door. *See id*.

Officer Lawson asked Arroyo, "[W]hat happened?" and Arroyo said, "What do you mean what happened?" *See id*. at 34, CPH-2 at 1:30. When Arroyo did not answer his question, Officer Lawson explained he could either tow the car or Arroyo could talk to him about the accident. *See id*., CPH at

---

[2] The footage from the body cameras worn by the officers in the case, CPH-2 (Officer Lawson), and CPH-3 (Officer Courts), was introduced into evidence, *see* N.T., 4/21/22, at 35, 52, 75, and is part of the certified record.

1:40-45. Arroyo said, "Okay." *See id*. Officer Lawson then described the information he was already provided about the accident; he said that the other driver "already gave us your tags . . . that's how I got your truck . . . . So, what happened, man?" *See id*., CPH-2 at 1:45-2:00; N.T. 4/21/22, at 37. When Arroyo stepped outside, Officer Lawson smelled alcohol emanating from him, and noticed his gait was unsteady. Arroyo spoke in Spanish to his wife, who then told Officer Lawson, "He rear-ended them." *See id*., CPH-2 at 2:08-2:18. Officer Lawson responded, "That's what the [other] guy said. There's not a lot of damage, but he did say he was rear-ended." *See id*., CPH-2 at 2:18-24. He added that "nobody's hurt or anything" and "we just need to get your insurance." *See id*., CPH-2 at 2:24-28. Officer Lawson additionally commented that "staying at the scene would be a big help." *See id*., CPH-2 at 2:28-34. Officer Lawson asked Arroyo, "Can you show me where you hit him?" *See id*., CPH-2 at 2:44-52.

Officer Lawson then asked Arroyo to provide his registration and insurance information; Arroyo looked unsuccessfully for the necessary paperwork in his truck. His wife then found the information on a cell phone. *See id*., CPH-2 at 3:00-7:45. After Officer Lawson obtained Arroyo's license and insurance information, he told Arroyo and his wife that the officer who was investigating the accident was on his way to talk to Arroyo about what happened and said, "If you just hang around for a few minutes, that'd be great." *See id*., CPH-2 at 7:45-9:30.

After meeting with Martin, Officer Courts drove to Arroyo's residence, arriving at approximately 10:23 p.m., fifteen minutes after Officer Lawson's arrival. *See id*. at 26, CPH-2 at 14:25. Officer Lawson relayed to Officer Courts that Arroyo admitted bumping into the other car and said he had obtained Arroyo's driver's license and insurance information. *See id*., CPH-2 at 14:25-50.

Officer Courts then approached Arroyo and, while standing approximately five feet from the door of the house, asked him, "What happened earlier?" *See id*., CPH-2 at 15:00-05; CPH-3, 7:55. As they spoke, Officer Courts detected an odor of alcohol from Arroyo. *See id*., CPH-3 at 8:03-8:22. Officer Courts administered field sobriety tests, which Arroyo did not perform satisfactorily. *See id*., CPH-3 at 9:00-17:00; N.T., 4/21/23, at 52-58. Officer Courts then administered a portable breathalyzer, that registered a blood alcohol level of .242. *See id*., CPH-3 at 17:00-18:15. Officer Courts placed Arroyo in handcuffs and arrested him for driving under the influence of alcohol. *See id*., CPH-3 at 18:30-20:30.

As a result of their investigation, police charged Arroyo with accidents involving damage to attended vehicle or property, driving under the influence ("DUI") general impairment (second offense), and DUI - highest blood alcohol content ("BAC") (second offense).[3] *See id*. at 78-79. At the conclusion of

---

[3] *See* 75 Pa.C.S.A. §§ 3743, 3802(a)(1), 3802(c).

the supplemental preliminary hearing/suppression hearing, the court found the Commonwealth had presented a *prima facie* case on all charges. The court invited counsel to submit proposed findings of fact and conclusions of law on Arroyo's suppression claim seeking the suppression of all evidence and statements resulting from an illegal arrest. ***See id***. at 78-79.

In its proposed findings, the Commonwealth asserted Arroyo was subjected to an investigative, not a custodial, detention. ***See*** Commonwealth's Proposed Findings of Fact and Conclusions of Law, 6/1/22. Arroyo asserted that the police subjected him to a custodial detention, the functional equivalent of an arrest, for which the right to ***Miranda*** warnings attach. Arroyo further argued that all his subsequent statements and his blood test results required suppression as "fruits of the poisonous tree" of the illegal arrest and failure to read him his ***Miranda*** rights. ***See*** Arroyo's Proposed Findings of Fact and Conclusions of Law, 6/3/22.

Initially, the court held Officer Lawson subjected Arroyo to a custodial detention and interrogation without informing him of his ***Miranda*** rights and suppressed Arroyo's statements to Officer Lawson. The court found, however, that Officer Courts's interaction with Arroyo "purged the taint" of Officer Lawson's custodial detention and admitted Arroyo's statements to Officer Courts, along with the results of the field sobriety tests, and his blood alcohol test. ***See*** Findings of Fact and Conclusions of Law, 6/13/22, at 6-9.

Subsequent to the trial court's suppression determination, Arroyo waived his right to a jury trial, and the court admitted the evidence and testimony from the supplemental preliminary hearing/suppression hearing into the trial record.[4] *See* N.T., 10/11/22, at 8-9. The trial court convicted Arroyo of the above-listed offenses, and then later sentenced him to an aggregate term of ninety days of house arrest to sixty months of restrictive probation.[5] *See* N.T., 12/21/22.

Arroyo filed a post-sentence petition to file a post-sentence motion *nunc pro tunc* on January 5, 2023. On January 18, 2023, the court granted the petition. Arroyo asserted Officer Courts's interrogation should have been suppressed because his interactions with Arroyo were a continuation of Officer Lawson's arrest and custodial interrogation without *Miranda* warnings. *See* Arroyo's Post-Sentence Motion, 2/21/23,[6] at 2-3.

Then on February 17, 2023, the trial court issued amended post-sentence findings of fact and conclusions of law, reversing its pre-trial ruling. The amended findings of fact added only three additional factual findings to the original opinion: 1) Officer Lawson obtained Arroyo's license and insurance

---

[4] In essence this was a stipulated fact trial.

[5] This was Arroyo's second DUI conviction.

[6] Although the docket states the post-sentence motion was filed on January 24, 2023, it is stamped as received on both February 21, 2023, and February 22, 2023.

information, told him Officer Courts was coming to speak with him, and asked him to "hang out"; 2) Officer Lawson said to another officer, "[L]et me just go talk to [Arroyo] before he goes inside" prior to Officer Courts's arrival; and 3) Officer Lawson retained Arroyo's driver's license and insurance information until Officer Courts arrived. *See* Amended Findings of Fact and Conclusions of Law, 2/17/23, at 6. Based on these three additional factual findings, the court reversed its pre-trial ruling and granted, post-sentence, suppression of Arroyo's statements to Officer Courts (in addition to the statements to Officer Lawson) and all evidence concerning Arroyo's field sobriety and blood tests. The court found that all the evidence derived from Officer Lawson's unlawful custodial detention and interrogation rendered the subsequent evidence "fruit of the poisonous tree." *See id*. at 7-10. The court then granted Arroyo's motion for judgment of acquittal on all charges. *See id*. at 10.[7]

---

[7] Both the trial court and the parties agree the court erred in granting a post-sentence judgment of acquittal. *See* Commonwealth's Brief at 35-37; Arroyo's Brief at 3; Trial Court Opinion 5/2/23, at 7.

The Commonwealth complied with Pa.R.A.P. 1925(b); the trial court, however, only addressed the Commonwealth's fourth claim[8] challenging the judgment of acquittal in its 1925(a) opinion.[9]

The Commonwealth submits the following issues for this Court's review:

1.      The trial court erred in suppressing the statements [Arroyo] made to Officer Lawson where [Arroyo] was subjected to no more than an investigatory detention, not custodial interrogation, and **Miranda** warnings are not required.

2.      The trial court erred in suppressing the subsequent statements [Arroyo] made to Officer Courts, as well as the field sobriety tests, where [Arroyo] was not previously subjected to a custodial interrogation by Officer Lawson and Officer Courts did nothing to escalate the interaction to the level of "in custody" for **Miranda** purposes until [Arroyo] was formally arrested following field sobriety testing.

3.      The trial court erred in suppressing the results of the chemical testing of [Arroyo's] blood where there was no initial illegality which was exploited to obtain this evidence and where the effects of any perceived illegality was sufficiently purged by the fact that officers had independent probable cause to believe [Arroyo] was driving under the influence and where the subsequent warnings at the time of the blood draw provided an independent source.

4.      The trial court erred in granting [Arroyo]'s motion for judgment of acquittal following its [post-sentence] suppression of evidence where, even if we assume that reconsideration of the

_____

[8] We remind the trial court Rule of Appellate Procedure 1925 does not afford it the discretion to address only the issues it chooses.  In the absence of a trial court opinion on the first three issues, we are compelled to analyze those issues using the trial court's amended findings of fact and conclusions of law.

[9] Because the trial court granted suppression *retroactively* following conviction and sentencing, and granted judgment of acquittal, there is no dispute the Commonwealth's appeal lies from a final order.

suppression motions was proper, the appropriate remedy is a new
trial.

Commonwealth's Brief at 4.

Because the first three questions presented concern the suppression of
the statements given to Officers Lawson and Courts and the evidence obtained
thereafter, based on the trial court's determination that Lawson's interaction
with Arroyo was a custodial detention, we address the first three interrelated
questions presented together.

The Commonwealth asserts the trial court committed an error of law
when it found Officer Lawson's encounter with Arroyo rose to the level of a
custodial detention, requiring the administration of **Miranda** warnings and, in
their absence, the suppression of Arroyo's statements to Officers Lawson and
Courts and of the blood alcohol evidence obtained thereafter.  We agree.

At suppression the Commonwealth bears the burden to establish the
challenged evidence was not obtained in violation of the accused's rights.  **See**
Pa.R.Crim.P. 581(H).  When the Commonwealth appeals an order granting a
defendant's motion to suppress, this Court considers only the evidence from
the defense witnesses[10] together with the evidence of the prosecution that
when read in the context of the entire record remains uncontradicted.  **See**
**Commonwealth v. Dales**, 820 A.2d 807, 812 (Pa. Super. 2003).  The
credibility of witnesses and the weight to be accorded their testimony is in the

_____

[10] Arroyo presented no evidence at suppression.

- 10 -

suppression court's sole province. *See Commonwealth v. Dutrieville*, 932 A.2d 240, 242 (Pa. Super. 2007).[11]

Although a reviewing court is bound by the lower court's findings of fact if they are supported in the record, it conducts plenary review to determine if the court properly applied the law to the facts. *See Commonwealth v. Dunkins*, 263 A.3d 247, 252 (Pa. 2021); *Dales*, 820 A.2d at 812. If the suppression court drew erroneous legal conclusions from the evidence, we may reverse. *See Dunkins*, 263 A.3d 252.

The Commonwealth's first three claims are resolved by our determination that in applying the facts of record which the trial court accepted as credible and are supported by the record, Officer Lawson's words and actions under the applicable law constituted an investigative detention, not a custodial detention, under the totality of the circumstances.[12]

An investigative detention, which requires reasonable suspicion, is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. *See*

_____

[11] Notably in both the original and amended Findings of Fact and Conclusions of Law the trial court found Martin's, Officer Courts's, and Officer Lawson's testimony completely credible AND consistent with the evidence submitted at suppression. *See* Original Findings of Facts ¶¶ 74-76; Amended Findings of Fact ¶¶ 74-76. Thus, all testimony and evidence are credible and uncontradicted.

[12] Because the trial court found all testimony credible there is no need to analyze if and where the record facts are contradicted.

*Commonwealth v. Rice*, 304 A.3d 1255, 1260 (Pa. Super. 2023); *Commonwealth v. Tam Thanh Nguyen*, 116 A.3d 657, 664 (Pa. Super. 2015). A custodial detention, by contrast, is the functional equivalent of an arrest and occurs when the nature, duration, and conditions of an investigative detention "become so coercive [] as to constitute the functional equivalent of an arrest." *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (citation omitted). During a traffic stop, police may ask the detainee a moderate number of questions to determine a driver's identity and to try to confirm or dispel the officer's suspicions. *See Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019). Additionally, during an investigative detention involving a car police may take a suspect's keys. *See Spence*, 290 A.2d at 316.

A trial court assessing whether an investigative detention has evolved into a custodial detention considers the totality of the circumstances including:

> the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police. . . . [C]ustodial interrogation has been defined as questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Further, an interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect.

*Spence*, 290 A.3d at 314-15 (citation and brackets omitted).

- 12 -

Where a driver leaves the scene of an accident that caused damage to a car or involves personal injury, makes no attempt to stop and identify himself, and he is identified as the driver, the evidence is sufficient to show he was involved in the accident for which he is required to remain at the accident scene and proves his commission of leaving the scene of an accident. *See Commonwealth v. Lowry*, 55 A.3d 743, 749-51 (Pa. Super. 2012);[13] *Commonwealth v. Hilfiger*, 615 A.2d 452, 456-67 (Pa. Super. 1992).

The uncontroverted, credited testimony shows Martin, an identified complainant, called 911 after being rear ended at a traffic light, described the incident to the dispatcher, followed Arroyo, observed his erratic driving, obtained his license plate number and relayed all of this information to the 911 dispatcher. Martin pulled over into a 7-Eleven parking lot, where Officer Courts met him to gather information about the accident and take a report.

Meanwhile, Officer Lawson obtained the same dispatch information and headed to the residence where the truck was registered in an attempt to locate the individual who did not remain at the scene of the accident and assist in the accident investigation. When Officer Lawson arrived at the residence, without the use of his lights or siren, he found the white pickup truck with the license plate number Martin gave the dispatcher. Officer Lawson knocked on

_____

[13] *Lowry* involves a violation of 75 Pa.C.S.A. § 3742, but like Section 3743 at issue here, Section 3742 requires the driver to comply with the Section 3744 obligation to remain at the scene of the accident, provide information and render aid.

the door, stepped back, waited for someone to answer the door, and asked to speak to the driver of the pickup truck. When Arroyo stepped forward, Officer Lawson asked him what happened, clearly in reference to the accident. At this point Officer Lawson had reasonable suspicion that Arroyo had left the scene of an accident, a Vehicle Code violation. *See* 75 Pa.C.S.A. § 3743 (requiring an individual involved in an accident involving vehicle damage "to remain at the scene of the accident[.]") When Arroyo hesitated, Officer Lawson told Arroyo he had a choice: to tell him about the accident or have his car towed.[14]

Officer Lawson then asked Arroyo for his license, registration and proof of insurance, as the law permits police to do at an accident scene. *See* 75 Pa.C.S.A. § 3744 (requiring a driver involved in an accident involving damage to a vehicle to provide his name, address, and, upon request, his registration, driver's license, and insurance information). With his wife's help, Arroyo located the information and handed it to the officer. Officer Lawson asked Arroyo to "hang out" to speak to Officer Courts, who arrived minutes later after gathering information from Martin, who **had** stopped after the accident. Officer Lawson did not talk in an aggressive manner, did not touch Arroyo, did

_____

[14] Significantly, Arroyo was at his residence and towing his truck, that had been in an accident, would not have caused him to be stranded or alone in a place unfamiliar to him. Moreover, as addressed *infra*, Officer Lawson's questions were legally permissible in instances, like this one, where an accident causes damage to a vehicle.

not handcuff him or put him in a police car and did **not** threaten to arrest Arroyo; instead, he asked Arroyo to "hang out" until Officer Courts arrived.[15]

The trial court recognizes that Arroyo's movements were not restrained and Officer Lawson acted in a non-confrontational manner. **See** Trial Court's Amended Findings of Fact and Conclusions of Law, 2/17/23, at 8, ¶ 12-13. However, it regards the "threat to tow" as the operative fact which transforms the investigative detention into a custodial detention, and assigns coercive weight to the officer's request that Arroyo "hang out" until Officer Courts arrived. **Id**. at 8, ¶14; 9, ¶ 3.

The trial court's primary reliance on the threat to tow and the request that Arroyo remain nearby until Officer Courts arrived did not allow for the required totality of the circumstances review, which would have recognized that Arroyo's flight from the accident scene necessitated the involvement of two investigating officers and caused a delay in the officers' ability to investigate the accident. Furthermore, the court did not consider Arroyo's actions preceding his interaction with Officer Lawson, and as a result the complete facts (accepted by the trial court as credible and consistent) were not viewed in their proper context. Thus, the trial court failed to weigh the

_____

[15] That Officer Lawson did not perform field sobriety tests further demonstrates that Officer Courts, who first attended to the accident victim, was the officer with the primary responsibility to investigate the accident. Additionally, the trial court itself recognized Officer Lawson made a "request," not a demand. **See** Trial Court's Amended Findings of Fact and Conclusions of Law, 2/17/23, at 9, ¶ 3.

totality of the circumstances and erred as a matter of law. *See Spence*, 290 A.3d 314-15. Viewed in their proper context, the facts show Arroyo was at his own home, having fled the scene of an accident in violation of his legal responsibility to remain there. Additionally, Officer Lawson did not threaten to arrest Arroyo for non-compliance – he stated only that Arroyo's pickup truck, which had just been involved in an accident, could be towed if he did not cooperate with the accident investigation (*see* 75 Pa.C.S.A. § 3744). Furthermore, Officer Lawson's questions to Arroyo concerned facts regarding the accident for which there was reasonable suspicion to believe Arroyo was involved. These are questions police may properly ask at an accident scene without converting a detention into an arrest.[16] *See Commonwealth v. Gonzalez*, 546 A.2d 26, 29-30 (Pa. 1988) (holding police did not arrest suspect when they approached him at an accident scene and asked him, *inter alia*, "what happened," because he had a statutory obligation to provide his license and proof of registration, was not subject to restraints comparable to an arrest, and was asked a minimal number of questions at the scene of an accident on a public street); *Commonwealth v. Williams*, 941 A.2d 14, 33 (Pa. Super. 2008) (*en banc*) (finding no arrest occurred when an officer arrived at accident scene, asked an intoxicated woman for her license and

---

[16] Additionally, the law authorized Officer Lawson to obtain Arroyo's registration and insurance information as the result of the collision. *See* 75 Pa.C.S.A. § 3744.

registration, told her to "sit tight," asked her "what happened?," and she admitted she had been driving). Moreover, the law authorized Officer Lawson to obtain Arroyo's registration and insurance information as the result of the collision. *See* 75 Pa.C.S.A. § 3744.[17]

Upon consideration of the nature, duration and conditions of this stop as we are legally compelled to do when reviewing the level of detention, these facts taken in their totality are not coercive enough to rise to the level of an arrest. Officer Lawson's encounter with Arroyo was not of long duration and reasonable under the circumstances. Officer Lawson did not transport Arroyo against his will, the officer used no physical restraints or threaten the use of force, or even conduct any tests on him. He asked Arroyo to "hang out" until the officer in charge of the accident investigation arrived as Officer Courts was attending to the other driver hit in the accident in another location due to Arroyo's flight from the scene. A total of fifteen minutes (approximately) transpired between Officer Lawson's initial arrival and Officer Courts's arrival at the Arroyo residence, which is certainly reasonable. As the uncontested facts bear out, Arroyo was at his home, and Officer Lawson did not hold him in a specific spot or restrain his physical movement except to ask him to stay

_____

[17] So, in effect, the trial court's finding of a custodial detention expanded Arroyo's rights for leaving the scene of an accident than those due a person who complies with his legal obligation to remain at the scene of an accident. That the detention occurred instead at Arroyo's house was solely the product of Arroyo's failure to follow the law.

until the investigating officer arrived to get his information. Keeping in mind that if Arroyo had remained at the accident scene the same questions would have been asked. Furthermore, Officer Lawson and Officer Courts certainly had reasonable suspicion to conduct an investigative detention based on the facts given by Martin, the other driver. *See Spence*, 290 A.3d at 314-15; *Wright*, 224 A.3d at 1109.[18]

Furthermore, the law cited by the court to support its legal conclusion that the encounter began as an investigative detention but rose to a "custodial detention" is both inapplicable and distinguishable. The trial court relies primarily on *Commonwealth v. Lyles*, 97 A.3d 298 (Pa. 2014); and *Commonwealth v. Hannon*, 225 A.3d 1190 (Pa. Super. 2019).[19] *See* Trial

---

[18] *Commonwealth v. Harper*, 230 A.3d 1231 (Pa. Super. 2020), *see* Arroyo's Brief at 16, does not compel a different result. In that case, this Court found arguable merit to an ineffectiveness claim asserting that a police officer subjected Harper to the equivalent of an arrest because he went in uniform to a hospital where Harper was being treated for a gunshot wound to the knee and the officer told Harper he was going to perform a gunshot residue test on his hands to see if he had fired a gun, then performed a fake test with a Q-tip and saline. This Court found a reasonable person would not have felt free to leave or refuse the gunshot residue test. *See id*. at 1234, 1239. Arroyo was neither incapacitated with an injury for which he was being actively treated nor was he threatened with an inculpatory test; Officer Lawson spoke to him outside his own house and asked questions permissible under Pennsylvania law.

[19] The citation Arroyo provides for *Hannon* is misleading as it is a table citation. *Hannon* is a non-precedential memorandum opinion, and its text can be found at 2019 WL 7371848 (Pa. Super. 2019). As a memorandum opinion, *Hannon* is not precedential and may only be cited for its persuasive value. *See* Pa.R.A.P. 126(b).

Court's Amended Findings of Fact and Conclusions of Law, 2/17/23, at 8, ¶¶ 9-10 (citing *Lyles*, 97 A.3d at 302).

The trial court erroneously relies on *Lyles* to determine whether Officer Lawson subjected Arroyo to a *custodial detention*. As the Supreme Court explained in the opening sentence of *Lyles*, that case addressed a different legal question: whether "an officer's request for identification elevated an encounter to an *investigative detention* unsupported by reasonable suspicion." *See Lyles*, 97 A.3d at 300 (emphasis added). The issue here concerns whether an investigative detention rose to a *custodial detention*. *Lyles* thus has no legal relevance to the issue in this case. *Hannon* is not only non-precedential, but distinguishable. In that case, by the time an officer spoke to the suspect, he knew the suspect had a suspended license, and knew from an eyewitness the man had been drinking and had allowed his child to drive his car. *See Hannon*, 2019 WL 7371848 at *1-*3. Under those circumstances, the memorandum opinion found the officers' questions amounted to custodial interrogation. Here, however, Officer Lawson had no advance knowledge Arroyo had been drinking – he only knew that Arroyo had most likely left the scene of an accident and he solicited only questions surrounding how the accident occurred, and obtained his license, and insurance information, all of which are legally permissible questions. *Hannon* accordingly does not lend persuasive authority to Arroyo's claim that Officer Lawson conducted a custodial detention and interrogation.

Because we hold that the trial court erred as a matter of law when it held that Officer Lawson's initial interaction was a custodial detention or the functional equivalent of an arrest, the court's suppression of Arroyo's statements to Officer Courts prior to being arrested and handcuffed and the results of the field sobriety tests Officer Courts administered and the results of the blood draw is legal error. [20]

We thus turn to the Commonwealth's fourth issue on appeal: the trial court's grant of a post-sentence judgment of acquittal. **See** Commonwealths Brief at 36-37. The court and both parties agree the proper remedy for the improper admission of evidence is a new trial, not a judgment of acquittal. **See** Trial Court Opinion, 5/2/23, at 7; Commonwealth's Brief at 35-37; Arroyo's Brief at 3.

_____

[20] The trial court cites **Commonwealth v. By**, 812 A.2d 1250 (Pa. Super. 2002), for the proposition that when a valid traffic stop has ended, subsequent questioning constitutes a mere encounter, unless a reasonable person would not feel free to leave, in which case subsequent questioning is part of an investigative detention or arrest. **See** Trial Court's Amended Findings of Fact and Conclusions of Law, 2/17/23, at 8-9, citing **By**, 812 A.2d at 1255-56. Here, Arroyo's departure from the accident scene necessitated questioning by two officers and therefore the valid traffic stop had not ended when Officer Courts arrived within fifteen minutes of Officer Lawson's first interaction with Arroyo. In any event, the police assuredly had reasonable suspicion of Arroyo's involvement in a traffic violation by the time Officer Courts arrived.

Additionally, field sobriety tests do not require **Miranda** warnings because such tests are physical in nature, not testimonial. **See Commonwealth v. Hayes**, 674 A.2d 677, 682-83 (Pa. 1996); **Commonwealth v. Weaver**, 768 A.2d 331, 332 (Pa. Super. 2001).

We agree. Sufficiency is not addressed on a diminished record – the court considers all evidence whether correctly or incorrectly admitted. *See Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa. Super. 2020) (citation omitted); *Commonwealth v. Fitzpatrick*, 181 A.3d 368, 374 (Pa. Super. 2018). Accordingly, even had the trial court reached the correct result in its post-sentence rulings on suppression, which as explained *supra*, it did not, Arroyo's remedy would be a retrial not discharge, which results from the grant of a judgment of acquittal. *See United States v. Scott*, 437 U.S. 82, 97 (1978) (stating a judgment of acquittal precludes retrial where trial court's ruling represents a ruling in the defendant's favor of some or all of the factual elements of the offense charged). Thus, as conceded by all, the court's post-sentence grant of judgment of acquittal was legal error.

Having found the trial court committed legal error, we reverse its grant of a post-sentence judgment of acquittal on suppression grounds, reverse the grant of suppression of Arroyo's statements to investigating officers prior to his arrest, reverse the suppression of the results of Arroyo's chemical blood testing, and remand for the reimposition of sentence.

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>9/19/2025</u>